LOCKNER v. HOLLAND.

(Niagara County Court. April 20, 1903.)

1. NOTE—CONSIDERATION—RENEWAL.
     Where a note is given for an adequate consideration, no new or addi- tional consideration is necessary to give validity to a renewal note.

2. SAME—TRANSFER AFTER MATURITY—DEFENSES.
     The fact that a valid note is transferred after maturity and without consideration is no defense to an action thereon.

¶ 1. See Bills and Notes, vol. 7, Cent. Dig. § 350.

3. SAME—HOLDING UP EXECUTION—COLLATERAL SECURITY.

A sheriff agreed to hold up an execution on personal property in consideration of a note given him by one not a party to the action, payable in three months, and guarantied by the judgment debtor. *Held*, that the note was not a collateral security for the payment of the execution, but an independent obligation.

4. SAME—TRANSFER—RATIFICATION—ESTOPPEL.

With the knowledge and consent of the judgment creditor's attorney, a sheriff agreed to hold up an execution in consideration of a note given by one not a party to the action, and guarantied by the judgment debtor. The sheriff afterwards transferred it to such attorney. *Held*, that the judgment creditor, having made no disclaimer, would be presumed to have had knowledge of, and to have acquiesced in, all that took place, including the transfer of the note.

Appeal from Justice Court.

Action by John Lockner against Lewis Holland on a note given by defendant to a sheriff in consideration of the latter's agreeing to hold up an execution on chattels. Judgment for defendant, and plaintiff appeals. Reversed.

W. E. Lockner, for appellant.
Selden E. Graves, for respondent.

HICKEY, J. One Bates, having a judgment in tort against one Daniel Printup and others, placed in the hands of the sheriff of Niagara county a property execution. The sheriff levied upon and took into his custody certain chattels belonging to Printup. Thereafter Printup and Lewis Holland, the defendant in this action, but a stranger to the action in which Printup was the execution debtor, called at the sheriff's office and asked to have the levy released and the execution held up, and offered the promissory note of Holland for the amount of the execution, payable in three months, and guarantied by Printup, as a consideration for such release and holding up of the execution. The sheriff, after consulting with, and obtaining the consent of, Bates' attorney, accepted the note and released the chattels so levied upon, and took no further steps, for the time being, looking to the enforcement of the execution. When the note became due, or soon thereafter, there was paid to the sheriff by Holland $10.63 in cash, and at the same time a new note was delivered to the sheriff for $32.49; being the amount, apparently, of the original note, less the $10.63 paid by Holland. The original note was thereafter surrendered up to Holland. The renewal note was given for 60 days, and, like the original note, was made payable to D. Gurney Spalding, sheriff of Niagara county. At the time it was given it was understood and agreed that the execution should be further held until the note was paid, and no steps were taken by the sheriff to realize on the execution until after the maturity of this renewal note. After the renewal became due, Holland was seen several times, and written to, respecting its payment, by the sheriff or his deputy; and he repeatedly promised to pay the note, but his promises did not materialize. After waiting a month or two after the maturity of this renewal note, and nothing having been paid to apply on it, Bates, the judgment creditor, or his attorney, caused a body execution to issue

against Printup, one of the judgment debtors; and, under such execution, Printup was taken into custody and confined in the county jail for three months, when he was discharged by the court. Thereafter D. Gurney Spalding, individually and as sheriff, transferred the Holland note by indorsement to William E. Lockner, attorney for the judgment creditor, Bates, who in turn transferred it by indorsement to John Lockner, who brings this action upon the note against Holland, its maker. The answer does not deny the making or delivery of the note, but denies, upon information and belief, that it was given for a valuable consideration. It also denies having knowledge, or information sufficient to form a belief, as to the transfers of the note set forth in the complaint. As a further defense, the answer alleges that the consideration for the original note was the promise of the sheriff that he would not commit to jail the judgment debtor, Printup, and that, as Printup was thereafter committed to jail, the consideration for the note failed, and it could not, therefore, be enforced. The action was tried in justice's court without a jury, and judgment of no cause of action was rendered.

The learned trial court found that there was no valid consideration for the execution and delivery of the note in suit to the sheriff, and none for any of its subsequent transfers. The consideration for the original note was ample, and the trial court undoubtedly so found, as nothing to the contrary is hinted at in the memoranda decision handed down. As the original note was given for an adequate consideration, it follows that no new or additional consideration was necessary to give validity to the renewal note. Nor was it necessary that any consideration pass for the subsequent transfers of the note in suit. If, at the time this action was commenced, no valid defense could have been interposed to the note in the hands of the sheriff, then the fact that it was transferred by the sheriff after maturity and without consideration constitutes no defense; assuming that the sheriff had a right to make the transfer.

The trial court also found that the note was given as collateral security for the payment of the execution, and that therefore Spalding had no right or authority to transfer the note to any one, except to Bates, the judgment creditor. The evidence fails to support a finding that the note was given as collateral security, in the common legal acceptation of that term. It was simply Holland's promise in writing to pay the debt of another. While a promise to pay another's debt places the promisor, in one sense, in the position of a surety, it does not follow that putting the promise in writing makes the writing a collateral security. Its effect is to make it an independent obligation, which can be enforced without first resorting to the original debtor. In the present case the intention of the parties seems to have been to make the note the primary, instead of the secondary, obligation. The understanding was that the note should be paid at maturity, and the execution held in the meantime, not that the execution would be paid, and the note held as security. In other words, the agreement was not that Printup would pay the execution at the expiration of the extended term of credit, and, in case of his default, that Holland would pay the note, but that Holland would

pay the note at maturity; and, if he made default, then Bates was free once more to enforce the execution. The effect of this was to make the note the primary obligation, and the execution the secondary. In any event, the note was not a collateral security, but was an independent obligation. Had it been given direct to Bates, the judgment creditor, instead of to the sheriff, he could have transferred it without let or hindrance. The sheriff was, in a sense, Bates' agent for the collection of the execution. He took the note with the knowledge and consent of Bates' attorney. He afterwards transferred it to such attorney. Under these circumstances, Bates having made no disclaimer, it will be presumed that he had knowledge of, and acquiesced in, all that took place, including the transfer of the note by the sheriff. He would now be estopped from asserting the contrary. In any event, Holland could not be made to pay the note twice, and no good reason appears why he should not pay it at least once.

The judgment below is reversed, with costs.